It's not very often that we see a case that is so styled. Typically, we would remind one of domestic relations, but that's not why we're here, is it? Well, first of all, I'd likewise like to say that it's an honor and a privilege to argue this case before three honors here today. And you please identify yourself. My name is Gary M. Spritz, attorney at law. As we all know, cases are always unique and special on their facts. And that's why we're here today, that this case has worked its way to the appellate courts because of its distinguishability and its uniqueness on its facts. The best way to handle facts is to give some history, and the history in this case is basically the basic facts. Charles Trowbridge was a surveyor in 1958. In June of 1960, he joined a pension plan. He then marries Linda Trowbridge in January of 1959. We will refer to Linda Trowbridge as wife number one. That marriage lasts for little under five years. No pension was vested at that time. In fact, it wasn't even going to vest for 30 more years of hard work of Charles Trowbridge. Linda, wife number one, files for divorce in January of 65. Charles never shows up to the divorce proceedings. In fact, he is defaulted in 1965 for divorce. In those days, divorce law was different than it is now. There was an interlocutory judgment that was given, and the court ordered that the final documents be prepared by the only party that was in the courtroom, Linda Trowbridge. The interlocutory decree also explicitly stated on the last page, it said to the parties, you are still husband and wife, didn't it? Your Honor, that is exactly what it said. It also tells them that if they want to have the decree become final, they'll have to apply within a year, after a year. Your Honor, you are absolutely correct. And nobody ever applied to make that decree final, did they? Nobody ever applied to make that decree final, Your Honor. That is absolutely correct. Why isn't Linda still the lawful spouse? Well, nobody is to argue that Linda Trowbridge was given a piece of paper in a courtroom that said, you are still married, and the only way for you to get divorced is to file this final paperwork. She was represented by counsel. Charles Trowbridge, being in his early 20s or middle 20s at the time, never showed up to that court proceeding. So is the burden then placed upon Linda Trowbridge's lawyer to contact Mr. Trowbridge and say, you know, you guys aren't divorced. You're not hardly divorced. Well, wherever the burden may be, you've still got to look and see what happens. Let me come to what, as I understand, is the real legal issue before us, and that is under the pension plan. Yes. Under the pension plan, the benefits were to go to the lawful spouse. Is that correct? That is correct. And the question that seems to me is whether a putative wife here in this case, the second and the fourth wife, would qualify as the lawful spouse when there was a spouse whose marriage had not been terminated by a final decree. Is that a fair statement of what the issue is? It's certainly a fair statement of a issue. Tell us why, in your view, the putative spouse should be treated as the lawful spouse. Thank you, Your Honor. Well, first and foremost, the law is clear that ERISA and the pension rulings from the federal courts do not preempt state law with regards to community property rights. In fact, we have to follow state law. In fact, you do. And the state law clearly, since 1911, the State of California has done everything it could to bring the concept of legal spouse and punitive spouse closer to beginning the punitive spouse. California hasn't merged them yet, though. It's not a matter as much as merger, but as to bring them closer so that punitive spouse, innocent spouses who marry, who look towards their husband and say, okay, I'm your fourth wife. Remember, Judy Trowbridge is his fourth wife. So here we got wife number three, wife number two, wife number one. Isn't the critical question here the interpretation of the words lawful spouse under the pension plan? Well, as we agree that the Allen case says, you know, it's a private contract, and therefore the federal jurisdiction says whatever the private contract says. Now, Judy Trowbridge, as the innocent spouse, goes before the pension and is designated twice the beneficiary of this pension. So, therefore, the pension has, in essence, accepted that she is, in quote, the lawful wife because Charles Trowbridge files under penalty of perjury, notarization, everything, that this is his lawful wife. What you're saying, basically, I think, is that we should interpret the words lawful spouse in the pension plan to mean punitive spouse. Is that correct? Well, I think it would be fair to say that there has to be some arrow pointed to wife number one that after 37 years of conduct, of allowing three separate women to go forward with, in quote, sham marriages, not to the women's mind, but in the mind of either Charles or in the mind of wife number one, this gets to the equity principles of clean hands. She's allowed now for my client to be married to a gentleman for almost 20 years, go through estate planning, go through picking choices with the pension of do we accept a lump sum or do we take it in payments. She goes through this whole process over a 20 year marriage for her to be innocent in the sense of you mean 37 years ago these two people did not file properly for their divorce and she doesn't know this. And when the pension validates and says you are the lawful spouse or the legal spouse pursuant to their own internal mechanisms, they require, the pension required, that any time you change a designation of beneficiary, it was required that you prove to the pension that you've been, that you're divorce papers. And that means that when Judy became the new designated beneficiary, he had to show that he was divorced from wife number two, Gail Trowbridge, because the pension said, well, your last beneficiary was this Gail Trowbridge, are you divorced from her? Yes, here's the paperwork. So Judy walks into the situation, sees a situation where the last designation has been now removed, the pension goes through its own internal mechanisms, its own checklist, and notarizes it, validates it, accepts it, and in fact pays Judy on the pension until this lawsuit arises from a marriage that was not finalized 37 years ago. All right, but still we have to come back to the language of the pension trust agreement, do we not? We have to look within the language and beyond the language. If we just look simply at the language. Pension death benefits must be paid to your surviving spouse. The law does permit a marriage to designate someone other than a spouse only if his lawful spouse consents to his choice of another beneficiary. And under California law, Linda was the lawful spouse. If it's that simplistic that we don't look at anything else other than that language. It's not that we don't look at anything else, it's the fact that we're dealing here with very technical issues. Pension rights, the effect of a divorce, the effect of marriage, I mean this isn't a broad general due equity situation, we're dealing with precise legal concepts. Let me put a question under your analysis, what position does Linda now have? What is Linda to in relation to Mr. Trowbridge? Is she his former wife, his ex-wife? An excellent question. Let me ask something. If we look to excerpt from record number 14, which is a grant deed of a purchase of a Linda Trowbridge personal residence in 1978, you clearly saw in that excerpt that she bought the property in 1978 during Charles' third marriage as an unmarried single woman. How about answering my question? Under your theory, what is Linda now? Is she the ex-wife, the former wife, or what? Well, she's definitely the separated wife of. If you say she's the separated wife, then you're acknowledging she's the wife. Well, I'm acknowledging that she did not proceed in any way over 37 years to finalize her divorce. So she was not finally divorced. Well, obviously, this is why we're here, is that there was no final judgment of divorce. However, if at any time during her almost 20-year marriage to Charles Trowbridge, Judy Trowbridge would have known of this fact, she could easily have done a very simplistic $15 motion at the courthouse and reversed this problem and not lost out on a $230,000 pension. It was such an easy thing to correct, but yet how can you correct something you do not know? You could have corrected it as well before passing. Excellent question. Very easy. Excellent question. Let me ask you this. I understand your arguments, and they really – this is an unfortunate situation. There's no question about that. But your arguments really go to the equities. And I'm just curious, what California court case – California Court of Appeal opinion or California Supreme Court case – says that in this particular situation, the putative spouse is the legal spouse? Well, what it is – How do I look to in light of Allen? Well, the – We have to apply California law. Of course. So apart from these serious equity arguments that you make – Yes, sir. It would be helpful if you could point to – point me to some case law that would support your argument. I appreciate that question. And I think we have to look under the entire body of punitive spouse law, which is an evolution of cases that have developed itself so that this – Okay. If I were to take your notion there and say, okay, I need to look at California case law and its evolving, its changing. So I look at case X and case Y, and it adds up to the point you're making. Which cases do I look to? Okay. I think in specific, you look towards – and this is on my brief, page 18 – the secession by punitive spouse. This is where the California courts recognized in secession cases that a punitive spouse has these type of rights. And here it says – may I – if I can quote – it says the equitable doctrine applies also to rights after death. Thus, on the death of a husband, the punitive wife is entitled to the same share in property as a de jure. I guess she's called a de jure wife, to answer Your Honor Friedman's question, because I'm trying to pinpoint what is she. So she's – De jure or de jure sounds like lawful to me. Well, you know, it is. I mean, from Latin, of course, that's what we're saying here. All right. So the same share, the same share in the property as the legal wife or lawful wife would have had, would have had. And if he dies in testate, as this occurred in our case, she is entitled to all the property, which would have been community property of a valid marriage. So to answer – But we don't have a secession issue here. Well, I'm trying – I'm trying to go forward with Judge Pius's direction on this, where he says, point me in a direction where California has grabbed the punitive spouse and says you've got rights. And, okay, we all agree that pension falls in your jurisdiction to the Federal courts. So we're not going to find a whole – Let me ask you – I'm sorry, Your Honor. I have a different related question, similar to the one I put to you before. As of today, as of this very moment, is Linda the lawful spouse of Mr. Trowbridge? In my opinion, which doesn't matter – Well, I didn't ask you whether it matters. I want to find out what is your opinion. No, the lawful – the lawful wife of Charles Trowbridge is Judy Trowbridge. The lawful wife. The lawful wife. Now, the legal wife – What's the legal wife? The legal wife is complicated by the technicality fact that we have a – You seem to be trying not to answer my question. Well, I – is the lawful spouse, then it's clear that Judy can't possibly be the lawful spouse because there can't be two lawful spouses at the same time. And if you tell me that she's not the lawful spouse, then I say, well, if she's not the lawful spouse, how was she separated? Because there's been no final divorce decree. It seems to me that you make a very appealing case in terms of the equities. And I think we're all sympathetic to this poor lady who's married for 15 years and finds she's getting only a small portion of his – what he – his pension interest. But California law seems to say that if there's been only an interlocutory divorce that has not become final, that does not terminate the marriage relationship. And yet for – it seems to me for Judy to be the lawful spouse, the previous marriage has to have been terminated since we don't permit multiple spouses in this country. Right, but we also don't allow ERISA to preempt the state law. And the state laws do give punitive spouses rights. Well, but that doesn't – you say that state law gives punitive spouses rights. That's true. But that doesn't address the question what rights there are in this case. Well, in secession cases, the same as the legal du jour wife. The same as the legal wife. That – why would in – and I'm – In those secession cases, were there competing claims by, you know, by lawful wife? In some – in some of the cases, I believe there were competing claims. Because usually people come to courthouses when there's a disagreement over something. And I'm asking – You could have heirs in the secession cases. Heirs or – I'm talking – let me say my question should have been a little sharper. Were there competing spousal claims? I believe so in the estate of Foy and in the estate of Crone. I think there was spousal issues in that. But the main thing is, okay, if we're going to put the equities aside here, then we have to take the distinguishability of this case. The federal court here has to – doesn't have to do anything. But I encourage to not allow innocent spouses like Judy Trowbridge who go forward to pension plans, get validated by notaries, get validated by penalty of perjury documents, get acceptance and clarification by pensions who follow their own internal mechanisms and then be told later that she has no status. And I can't – You're down to less than two minutes. If you wish to reserve, you may, or you can continue. Well, I would – Your choice. Well, I'll finish. In conclusion, gentlemen, this is a tragic situation. And this is horrific for Judy Trowbridge. And we fought very hard to get to this place here today. And I know we have this distinguishing issue between what are the rights of the punitive spouse versus the legal spouse. And I'm asking you as a court that sits here not only in law but also a court in equity to do justice, do fairness. This lady waited and waited for 37 years, allowed three marriages to go forward, bought property as an unmarried woman, collected child support, collected alimony. In her mind, you know, we have to look at what Linda Trowbridge was doing as far as her own clean hands. He who wants equity must do equity. And here Judy Trowbridge is left out in the cold and Linda Trowbridge is able to walk through this window because of an order of a court in 1965 that said you're still married. We don't know for a fact if Charles got that document, was contacted by the attorney. But we do know one thing, that Judy Trowbridge, the innocent good faith spouse, has determined there's no conclusion any other way that she thought she was married to Charles Trowbridge should not be left out as legal versus punitive. California has tried its best to try to avoid these circumstances by getting the punitive spouse closer to the legal spouse status. And it has done it in secession cases. It's done it in property cases. And now I'm asking, because this falls under your jurisdiction, for you to somehow find the equity principles and the law principles that would allow a punitive spouse to have more rights than what she's given in this circumstances. Thank you so much. And I greatly appreciate your time. Thank you very much, counsel. We will now hear from the appellee. Thank you for the privilege of being here. I've never been here before. I'm very nervous. This isn't where I expected to be. Don't be nervous, Ms. Adler. First of all, just introduce yourself for the record. I'm June Adler. Thank you. I never thought that as I closed my 35 years of family law practice that I would be here arguing something. But anyway, here I am. I think one thing that we forget is that there is a finding by the Superior Court of the County of Los Angeles that Charles and Linda never intended to get a divorce. I know that because I'm the one who litigated that case. Well, it was Linda who sought the divorce. Is that right? Yes. It was Linda who sought the divorce. And it was also Linda who knew that she was not divorced. Charles knew he was not divorced. That was clear in the case where there was an attempt to have the marriage finalized, nunc pro tonc. Gail testified, and she begged Charles to get a divorce from Linda, which he refused not. He refused to do it. He knew he was married to her. That can be seen on the beneficiary statements he signed with the pension plan, where he signed under the statement that if I don't have a legal spouse, then Judy Trowbridge gets the pension plan. I find it interesting that there's an argument that Linda somehow should have stopped Charles from marrying all these women. I don't think Linda really had the power to stop Charles from doing anything. Charles knew fully well he was married. If he wanted to be divorced from her, he certainly could. I don't see this as a unique case. I see this as just Jones relitigated. It seems to be the same case. The difference in Jones is that the second wife, or the one who made the claim and became the putative spouse, also had children by the employee, which Judy Trowbridge did not have children by Charles. We talk about the rights of the putative spouse. I think that the district court gave Judy all the rights that are allowed under California family law to the putative spouse. She's entitled to one half of the accumulation of the estate during the marriage, and Judy did get that. The quasi-marital rights. Quasi-marital rights, yes. I have looked up every case that has been cited by opposing counsel, and I cannot see that there is any case contrary to what the district court judge found. I read them all, and all of them stand for the principle that there is a contract between the employee and the pension plan, and that if we had just that contract, Linda would have gotten everything because she was the legal spouse. The California community property laws require that the putative spouse gets an interest, and Judy did get that interest. She got just exactly what she was entitled to under California law. I really don't have anything more to say, Your Honors. Are there any further questions? No questions from the bench. Thank you very much. In the absence, you say you're a little nervous about this. Nobody will ñ you'll never get any complaints from the bench if you use less time than is allotted to you. If you try to step over it when the red light goes on, then they'll jump on you. But if you don't use all your time, everybody will smile at you. Well, you know, I wish I had more to say, but I really think I've covered everything. And I thank you for your time. And we have your brief, too, Ms. Adler. Thank you very much. Thank you very much. The case just argued will be submitted for decision. And we will hear argument in donor versus California Department of Corrections.
judges: Friedman, O'scannlain, Paez